CHIEF JUSTICE BOBEBTSOÍT
delivered the opinion oe the court.
An act of the 4th of March, 1867, entitled “An act to amend the charter of the Bardstown and Bloomfield Turnpike Road Company,” provides “that the presiding judge and a majority of the justices of the peace of Nelson County might, by their concurrent vote, subscribe five hundred dollars a mile to the capital stock of said company, and levy a tax ad valorem on all property in that county subject to taxation for revenue purposes;” and by a supplemental enactment of the same date certain designated persons were appointed to obtain stock preparatory to the organization of the company as prescribed thereby.
A subsequent act of the 8th of March, 1867, authorized the like subscription in the same mode, without limitation as to amount, “ for stock in any turnpike road that is now or may hereafter be organized in said county.” And by an act of March 9, 1868, all the county courts in the state, except in a few specified counties, were authorized to subscribe stock for their respective counties in “all the turnpike companies which have been or shall hereafter be incorporated by said county court or by the legislature of said state.” But this enactment required the ratification of a majority of the votes cast at any election called in a county to confirm or reject any proposition submitted by the county court to subscribe stock. Under this last act a proposed subscription to all the turnpike roads *305 chartered or ever afterward to be chartered by the county or the legislature was, of course, rejected by tbe voters of the people of Nelson. And then the majority of all the justices of that county subscribed five hundred dollars a mile to the Bardstown and Bloomfield Turnpike, according to its amended charter.
After the construction of the road was commenced, and a portion of the taxes levied to complete it had been collected and partially expended on the work, one hundred-and twenty-four tax-payers of the county,' supplied with railroad or turnpike facilities to which the whole county had contributed, filed a petition in equity enjoining the enforcement of the laws against them, and seeking exoneration from the payment of any of them on the assumed ground that the subscription and levy, without the sanction of the popular vote, were illegal and void. The circuit court dissolved the injunction and dismissed the petition; and this appeal calls for a revision of that judgment.
The legality of the subscription and the levy is questioned only on the assumption that the mode of subscribing prescribed by the original charter of this road, and by the act also of the 8th of March, 1867, has been abolished by the act of the 9th' of March, 1868.
The oharter being a contract whose obligation could not be constitutionally impaired, had not'an act of 1856 authorized the legislature to modify or repeal charters subsequently granted, the provision in the amended charter of 1867 prescribing the mode of subscribing could not have been repealed by the legislature; but as that contract was made subject to the power of repeal, a positive repeal would not impair its obligation thus qualified by the reserved power of repeal.
But the act claimed as a repeal ought to be clearly so intended beyond a reasonable doubt. In this case there is no such constructive repeal. The act of 1868 applies only *306 to subscriptions made under its sole authority, and neither expressly nor constructively includes subscriptions under precedent or subsequent charters expressly dispensing with the popular vote. The appellee, having such a charter, needed no other authority, and was not required to invoke any other; and its subscription was therefore sustained under the act of 1867, and not in any respect under the act of 1868.
The judgment is therefore affirmed.